No. CV 09-6082 DDP
(Consolidated with No. CV 09-5301 DDP)

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

THOMAS S. PACCIORETTI AS LIQUIDATING TRUSTEE FOR DELTA ENTERTAINMENT CORPORATION

Plaintiff and Appellee,

v.

STARCREST PRODUCTS OF CALIFORNIA, INC.

Defendant and Appellant.

On Appeals from Orders of the
United States Bankruptcy Court for the Central District of California, Los Angeles Division, Bankruptcy Court Case No. LA 07-16302-EC, and Adversary Proceeding No. 08-01713-EC, The Honorable Ellen Carroll

### APPELLANT STARCREST PRODUCTS OF CALIFORNIA, INC.'S REPLY BRIEF

D. GERBER LAW OFFICES
David A. Gerber (Bar No. 76509)
2741 S. Victoria Avenue, Suites C-D
Oxnard, CA 93035
Telephone: (805) 382-8760
Facsimile: (805) 382-8768
dgerberlaw@verizon.net

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
Robert R. Barnes (Bar No. 144881)
Yale K. Kim (Bar No. 188895)
515 S. Figueroa St., 9th Floor
Los Angeles, CA 90071
Telephone: (213) 622-5555
Facsimile: (213) 620-8816
bbarnes@allenmatkins.com,
ykim@allenmatkins.com

*Attorneys for Appellant and Defendant*
STARCREST PRODUCTS OF CALIFORNIA, INC.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................. iii
MEMORANDUM OF POINTS AND AUTHORITIES ...................... 1
I.   PRELIMINARY STATEMENT ........................................ 1
II.  STATEMENT OF APPELLATE JURISDICTION ..................... 1
III. ISSUES PRESENTED ................................................. 3
IV.  STANDARD OF REVIEW ............................................ 4
V.   STATEMENT OF THE CASE ......................................... 4
VI.  ARGUMENT ......................................................... 5
     A.   THE BANKRUPTCY COURT ERRED IN ASSERTING
          JURISDICTION ................................................ 5
     B.   THE BANKRUPTCY COURT ERRED IN GRANTING
          PACCIORETTI'S SECOND MOTION TO AMEND ............. 6
          1.   Broadway Ignores F.R.Civ.P. 82 ........................ 6
          2.   F.R.Civ.P. 17(a)(3) Does Not Permit Amendment to Create
               Jurisdiction Where None Exist ......................... 7
          3.   F.R.Civ.P. 15 Does Not Permit Amendment to Create
               Jurisdiction Where None Exists ........................ 9
          4.   11 U.S.C. §105(a) Does Not Permit Amendment to Create
               Jurisdiction Where None Exists ....................... 10
          5.   28 U.S.C. §1653 Does Not Permit Amendment to Create
               Jurisdiction Where None Exists ....................... 11
VII. CONCLUSION ..................................................... 11
CERTIFICATE OF COMPLIANCE ........................................ 12

# TABLE OF AUTHORITIES
## CASES

Big Rivers Elec. Corp. v. Schilling, 266 B.R. 100 (W.D.Ky. 2000) .................. 1

Countrywide Home Loans, Inc. v. Wilkersen, 420 B.R.18 (D.Haw. 2009) ............ 6

Damir v. Trans-Pacific National Bank, 196 B.R. 167 (N.D.Cal. 1996) ............... 3

Davis v. Yageo Corp., 481 F.3d 661 (9th Cir. 2007) ............................. 7

Dunmore v. United States, 358 F.3d 1107 (9th Cir. 2004) ................. 1-2, 5-6

Easter v. Union Financial Corp., 381 F.3d 948 (9th Cir. 2004) ................. 7

Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1 (2004) .................... 6

Ellzey v. United States, 324 F.3d 521 (7th Cir. 2003) ....................... 10

Hart v. Massanari, 266 F.3d 1155 (9th Cir. 2001) ............................ 6

JSC Terminal, LLC v. Farris,
    2010 U.S. Dist. LEXIS 52481 at *6 (W.D.Ky. May 27, 2010) .............. 9

Kashani v. Fulton, 190 B.R. 875 (9th Cir. BAP 1995) ......................... 3

Kenrose Mfg. Co. v. Fred Whitaker Co., Inc., 512 F.2d 890 (4th Cir. 1972) ....... 7

Kent v. N. Cal. Reg. Office, 497 F.2d 1325 (9th Cir. 1974) ................... 7

Kreisel v. Kreisel, 399 B.R. 679 (Bankr. C.D.Cal. 2008) ......................... 9

Lamb v. United States Postal Serv., 852 F.2d 845 (5th Cir. 1988) .............. 9

Liberty Mutual Ins. Co. v. Official Unsecured Creditors' Committee,
    207 B.R. 899 (9th Cir. BAP 1997) ................................ 10-11

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ............................ 5

Mason v. Massie, 335 B.R. 362, 368-70 (N.D. Ohio 2005) ....................... 2

Mid-Continent Racing & Gaming Co., Inc. v. Sunflower Racing, Inc.,
    218 B.R. 972 (D.Kan. 1998) ............................................ 2

Miguel v. Country Funding Corp., 309 F.3d 1161 (9th Cir. 2002) ............. 10

Newman-Green, Inc. v. Alfonso-Larrain, 490 U.S. 826 (1989) .................. 11

Appellant's Reply Brief

## TABLE OF AUTHORITIES - CONTINUED

### CASES - CONTINUED

Official Committee of Unsecured Creditors v. Credit Lyonnais Bank Nederland, N.V.,
    167 B.R. 176 (9th Cir. BAP 1994) .................................... 4

Packers' Cold Storage, Inc. v. Bayview Trucking, Inc.,
    64 B.R. 265 (Bankr. C.D.Cal. 1986) ................................... 10

Read v. Duck, 105 B.R. 542 (9th Cir. BAP 1989) ............................ 10

Sea Hawk Seafoods, Inc. v. Alaska, 439 F.3d 545 (9th Cir. 2006) ................ 4

United States v. Judge, 944 F.2d 523 (9th Cir. 1991) ........................ 3

United States ex rel. Precision Co. v. Koch Industries, Inc.,
    31 F.3d 1015 (10th Cir. 1994) ......................................... 9

United States v. Suntip Co., 82 F.3d 1468 (9th Cir. 1996) ..................... 7

USM Corp. v. GKN Fasteners, Ltd., 578 F.2d 21 (1st Cir. 1978) ................ 9

### STATUTES AND OTHER PROVISIONS

F.R.Bankr.P. 9030 ..................................................... 7

F.R.Civ.P. 15(a) ................................................... 7, 9-10

F.R.Civ.P. 15(c) ................................................... 1-2, 10

F.R.Civ.P. 17(a)(3) ................................................ 4, 7-11

F.R.Civ.P. 82 ...................................................... 6-7, 11

11 U.S.C. §105(a) ................................................... 10-11

28 U.S.C. §1292(b) ..................................................... 2

28 U.S.C. §1653 ....................................................... 10

U.S. Const., Art. III ............................................... 2, 4-6, 10

### TREATISE

MOORE'S FEDERAL PRACTICE .......................................... 7-9

Appellant's Reply Brief

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Paccioretti did not allege, offer evidence, or argue that he suffered "injury in fact," and Broadway's Answering Brief does not so contend. Yet Broadway shrugged off the Bankruptcy Court's suggestion that it file an independent proceeding to sidestep the resulting jurisdictional impediment. Instead, with Paccioretti it launched an armada of arguments to achieve the impossible -- conjuring up subject-matter jurisdiction over Paccioretti's adversary proceeding. The Bankruptcy Court's initial take was right, and the proceeding should have been permanently dismissed for want of jurisdiction.

This brief adheres to the organization of the Opening Brief to enable the Court to better track the parties' arguments. The Court will discern that large swaths of the Answering Brief are misdirected.

## II. STATEMENT OF APPELLATE JURISDICTION

The Answering Brief does not dispute that standing is a "controlling" question or that judicial economy will be served by determining the issues now. See Big Rivers Elec. Corp. v. Schilling, 266 B.R. 100, 105 (W.D.Ky. 2000) ("consideration of this issue now will save time for this Court. It is very likely that the final ruling of the Bankruptcy Court on the issue will be appealed. The Court simply would delay the inevitable by refusing to grant leave").

Answering Brief 8-9 does contest the third "leave" criterion, whether there is "a substantial ground for difference of opinion." Opening Brief 3 identified two "differences of opinion." First, "the Circuits are split on the availability of amendment under F.R.Civ.P. 15(a) to cure an Article III standing defect, and the Ninth Circuit has not weighed in." In response, Answering Brief 8 hurls the accusation that Starcrest "misleads this Court by asserting that 'the Ninth Circuit has not weighed in'" on this issue.

This brickbat is impossible to justify. It is uncontrovertable that "the Ninth Circuit has not weighed in" on whether Rule 15(a) can cure a constitutional standing defect. In support of its indictment, Answering Brief 8-9 cites only Dunmore v. United States, 358

F.3d 1107 (9th Cir. 2004). That decision, however, nowhere mentions Rule 15(a). It is a hard fact that the Ninth Circuit has not opined on this issue dividing the Circuits -- rendering prompt appellate consideration highly desirable.

The second "difference of opinion" was that "according to the Bankruptcy Court, there is also a Circuit split on the pleading requirements for Article III standing." Answering Brief 8 says "there is controlling Ninth Circuit precedent" on the question, but this precise point is at issue in the pending appeals. The Bankruptcy Court endorsed Broadway's position that the Ninth Circuit uniquely endorses a "squishy" principle that injury to *someone* suffices for "injury in fact." Starcrest urges that the Circuit is in accord with the Supreme Court and other Courts in requiring injury to the *plaintiff*.

Apart from unsoundly challenging one factor, Answering Brief 7 adds one, that leave "should be 'reserved for cases of exceptional circumstances.'" It cites no Ninth Circuit authority employing this language, and in no jurisdiction is "exceptional circumstances" set out as a fourth factor. To the contrary, the three standard factors *define* "exceptional circumstances." See, e.g., Mid-Continent Racing & Gaming Co., Inc. v. Sunflower Racing, Inc., 218 B.R. 972, 977 (D.Kan. 1998) ["'leave to hear appeals from interlocutory orders should be granted with discrimination and reserved for cases of exceptional circumstances.' In determining whether the appeal of an interlocutory order of a bankruptcy court is appropriate, district courts generally apply the same standards as set forth in 28 U.S.C. §1292(b)"] (citations omitted); Mason v. Massie, 335 B.R. 362, 368-70 (N.D. Ohio 2005) (same). There is no "exceptional circumstances" criterion requiring separate analysis.

Notably, while mustering its two arguments against leave to appeal, Answering Brief 4 strengthens the case for it. It refers to dozens of "objections to claims, stipulations, settlements and other post-confirmation acts" and "numerous adversary proceedings to recover on various unpaid accounts receivable" by Paccioretti. These actions are void if Paccioretti lacks Article III standing. This is true even if the involved parties stipulated, for "litigants cannot confer jurisdiction by consent where none exists."

United States v. Judge, 944 F.2d 523, 525 (9th Cir. 1991).

Because the jurisdictional "issues affect not only this proceeding but other proceedings involving these debtors" leave to appeal is particularly desirable. Damir v. Trans-Pacific Nat. Bank, 196 B.R. 167, 170 (N.D.Cal. 1996). For example, "the statute of limitations will continue to run on the allegations which form the basis of the Debtors' alleged claims" and hence "Hearing the appeal now . . . forestalls the possibility that the statute of limitations may possibly bar a valid claim in the future." Kashani v. Fulton, 190 B.R. 875, 883 (9th Cir. BAP). Delaying appeal would only complicate efforts to remedy the mayhem Broadway and Paccioretti spawned in this and the other proceedings.

### III. ISSUES PRESENTED

Quite astonishingly, Answering Brief 1's Statement of the Issues omits whether the Bankruptcy Court erred in asserting subject-matter jurisdiction. The brief's ensuing argumentation echoes this lacuna: It contains no stand-alone section and only two disparate sentences regarding the Bankruptcy Court's jurisdiction over Paccioretti's Complaint.[1]

On the second issue Starcrest presents, that of amendment, Answering Brief 5 dreams up an alternative universe: "Because the misnaming in the complaint identifying the Liquidating Trustee as 'Thomas Paccioretti, Liquidating Trustee,' rather than as 'Thomas Paccioretti, on behalf of Broadway Advisors, the Liquidating Trustee' was an honest and understandable mistake, the Bankruptcy Court did not err by permitting the Liquidating Trustee to correct this mistake."

The Bankruptcy Court certainly did not allow the liquidating trustee to correct "this mistake." Paccioretti did not seek to substitute in the oddly-denominated "Thomas Paccioretti, on behalf of Broadway Advisors, the Liquidating Trustee." Starcrest did not oppose this nonexistent substitution request. Granting the fictive amendment is not an assigned error, for the Bankruptcy Court did no such thing. Official Committee of

---

[1] See Secs. VI.A. and VI.B.2, infra.

-3-    Appellant's Reply Brief

Unsecured Creditors v. Credit Lyonnais Bank Nederland, N.V., 167 B.R. 176, 180 (9th Cir. BAP 1994) (citation omitted) ("Issues raised for the first time on appeal will not be considered. The bankruptcy court did not have the opportunity to consider this issue, and as such, the Panel will not consider it").

Nor would Broadway's imaginary scenario help it. Paccioretti's self-inflicted jurisdictional wound would remain. Because he lacked constitutional standing, the Bankruptcy Court had no adjudicatory power irrespective of whom he might have tried to substitute in. The Court could not consider leave to amend whether he sought to bring in Broadway, the Answering Brief's counterfactual entity, or the Man in the Moon. The absence of subject-matter jurisdiction would prevent judicial action other than dismissal across all these variations.[2]

## IV. STANDARD OF REVIEW

Answering Brief 1-2 lists profuse standards of review but does not say which applies. De novo review, the standard for "a bankruptcy court's determination of its jurisdiction," facially governs. Sea Hawk Seafoods, Inc. v. Alaska, 439 F.3d 545, 547 (9th Cir. 2006). Broadway does not contest this.

## V. STATEMENT OF THE CASE

Answering Brief 2-4 presents facts concerning the relationship between Paccioretti and Broadway. It does not posit that Broadway and Paccioretti are legally identified, and none of the facts remotely relates to "injury in fact" to Paccioretti, his acquisition of the right to sue Starcrest, or anything else germane to Article III standing. Indeed, the facts were proffered to the Bankruptcy Court not to prove standing, but to show that naming Paccioretti as the plaintiff was an "honest and understandable mistake" under F.R.Civ.P. 17(a)(3). AA, Vol. 2, IN 36. The facts were not offered in support of the issues before this Court, and are not relevant to them.

---

[2] In addition, Broadway does not even contend that either debtor's estate or the Bankruptcy Court authorized "Thomas Paccioretti, on behalf of Broadway Advisors, the Liquidating Trustee" to sue Starcrest.

-4- Appellant's Reply Brief

## VI. ARGUMENT

### A. THE BANKRUPTCY COURT ERRED IN ASSERTING JURISDICTION

Broadway's first, fleeting mention of the jurisdictional issue is at Answering Brief 10: "the Bankruptcy Court properly recognized that, although courts use imprecise language, constitutional standing does not require the injury in fact have actually occurred to the party bringing the suit."

This fantastic statement is not the law. With the exception of suits by assignees of the injured person, the Constitution requires an allegation of injury to the *plaintiff*. If the pleading is attacked factually for want of Article III standing, injury to the *plaintiff* must be proven. A uniform body of decisions from the Supreme Court, the Ninth Circuit and the other Circuits repeatedly so holds. Not one case supports Broadway's notion (which the Bankruptcy Court embraced) that an allegation of injury to *someone* suffices.

Answering Brief 11-12 grounds its extraordinary conception of standing in a solitary decision – again Dunmore, supra. But Dunmore unequivocally supports Starcrest. It is in harmony with the long-established orthodoxy, and forcefully negates Broadway's radical concept of Article III standing.

The decision expressly stated that "To assert constitutional standing in this case, [plaintiff/debtor] Dunmore must have suffered an 'injury in fact' that is fairly traceable to [the defendant] and that a favorable court decision could likely redress." Dunmore, supra, 358 F.3d at 1111 (emphasis added).[3] It found that Dunmore alleged that he suffered "injury in fact" from a failure of the IRS to refund his taxes. Dunmore, supra, 358 F.3d at

---

[3] The opinion cited Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992), in which the Supreme Court set out Article III's requirements in somewhat greater detail: "First, the plaintiff must have suffered 'injury in fact' - - an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not "conjectural" or "hypothetical."' Second, there must be a causal connection between the injury and the conduct complained of - - the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely speculative, that the injury will be redressed by a favorable decision."

-5-  Appellant's Reply Brief

1112. Because of the asserted injury to himself, the Court easily concluded that "Dunmore has constitutional standing." Id.[4]

Nowhere in Dunmore can Broadway's equation of "injury in fact" with injury to *someone* be found. The decision expressly holds to the contrary, as does every other case on the topic: Injury to *plaintiff* is constitutionally necessary. Since Paccioretti did not aver, prove or argue that he personally incurred "injury in fact," he lacked Article III standing and the Bankruptcy Court lacked subject-matter jurisdiction.[5]

Notably, if Dunmore stood for Broadway's capacious definition of Article III standing it would directly contravene Supreme Court teaching and be of no force. "A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules or modifies it." Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir. 2001). Thus even if Broadway's mischaracterization of Dunmore were accurate it would furnish no assistance to it.

## B. THE BANKRUPTCY COURT ERRED IN GRANTING PACCIORETTI'S SECOND MOTION TO AMEND.

### 1. Broadway Ignores F.R.Civ.P. 82

Answering Brief 6 philosophizes about "the principals [sic] which animate the Civil Rules," divining that "non-prejudicial error" should not affect a case. These ruminations do not consider Rule 82, under which "These rules shall not be construed to

---

[4] Dunmore had no occasion to consider whether amendment could cure an Article III standing defect, since there was no such defect. Dunmore did face a "prudential standing" problem, in that "the bankruptcy estate was the real party in interest because it owned the refund claims when Dunmore filed his . . . complaint." Dunmore, id. The Bankruptcy Court had the power to consider the "prudential standing" question, specifically whether ratification by the real party in interest served to authorize Dunmore's suit, precisely because it possessed jurisdiction.

[5] Answering Brief 8, 9 also cites Countrywide Home Loans, Inc. v. Wilkersen, 420 B.R.18, 23 (D.Haw. 2009), but that opinion is as unqualifiedly favorable to Starcrest as is Dunmore: "Constitutional standing requires the plaintiff to 'show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a formal judgment will redress" (emphasis added), quoting Elk Group Unified School Dist. v. Newdow, 542 U.S. 1, 11 (2004).

extend or limit the jurisdiction of the United States district courts."[6]

The "animating principle" behind Rule 82 is that "The Federal Rules of Civil Procedure do not create standing in a plaintiff who otherwise lacks it." Easter v. Union Financial Corp., 381 F.3d 948, 963 (9th Cir. 2004); see United States v. Suntip Co., 82 F.3d 1468, 1474 (9th Cir. 1996) ("The Federal Rules of Civil Procedure cannot be construed to expand the jurisdiction of the district courts. Fed.R.Civ.P. 82. They cannot create jurisdiction where none exists"). Accordingly, "Where jurisdiction does not otherwise appear, mere permission, in the rules, to assert a claim, does not itself confer jurisdiction over that claim. By express provision the rules are not to be read as a source of jurisdiction. *See* Rule 82." Kenrose Mfg. Co. v. Fred Whitaker Co., Inc., 512 F.2d 890, 893 (4th Cir. 1972). Broadway's persistent reliance on Rules 15(a) and 17(a)(3) obstinately flouts this fundamental, and simple, "animating principle."

### 2. F.R.Civ.P. 17(a)(3) Does Not Permit Amendment to Create Jurisdiction Where None Exists

The Answering Brief does not comment on the cases discussed at Opening Brief 13-14, which hold that in the absence of subject-matter jurisdiction Rule 17(a)(3) is an improper tool for amending. In particular, it plays ostrich with the Ninth Circuit's crystal-clear decisions to this effect in Davis v. Yageo Corp., 481 F.3d 661, 678 (9th Cir. 2007), and Kent v. N. Cal. Reg. Office, 497 F.2d 1325, 1329 (9th Cir. 1974). There is not a solitary case within the Circuit – or anywhere – permitting amendment under Rule 17(a)(3) when the plaintiff lacks constitutional standing.

Instead of addressing Starcrest's primary authorities, Answering Brief 3 misdescribes (in lieu of quoting) MOORE'S to negate Davis, Kent and all the other judicial opinions holding that there must be subject-matter jurisdiction before a Court may consider party substitution under Rule 17(a)(3). Broadway's reformulation, which it bolds for emphasis, is that **"the determination of whether the court has jurisdiction is**

---

[6] F.R.Bankr.P. 9030 similarly provides that "These rules shall not be construed to extend or limit the jurisdiction of the courts."

-7-   Appellant's Reply Brief

made after the real party in interest has acted" by ratifying, joining or substituting to change a party.

This "spin" turns MOORE'S upside down. MOORE'S does not say that "the" determination of jurisdiction is made only after a new party is inserted into an action under Rule 17(a)(3). It says that "a" - - i.e., "another" – jurisdictional determination is then made. MOORE'S recognizes that jurisdiction must be determined at the outset of the case. If *ab initio* the Court possesses jurisdiction, and it allows a Rule 17(a)(3) substitution, it must make another jurisdictional determination to ensure that it still has adjudicatory power once the new party is in the case.

Specifically, as to the initial jurisdictional determination MOORE'S observes that:

> "Rule 17 does not affect jurisdiction. The Rule relates only to the determination of proper parties and the capacity to sue. Federal jurisdiction is assessed based on facts as they exist at the time the suit was filed." 4 MOORE'S §17.13 [1], p. 17-65.

MOORE'S n.3 lists cases illustrating **"Jurisdiction determined at filing."**

MOORE'S then proceeds to describe the additional jurisdictional determination made necessary if a new party is brought into a case pursuant to Rule 17(a)(3). At that point "the court must be able to exercise subject matter jurisdiction once the real party in interest has ratified or been joined or substituted in the action." MOORE'S n.4 then lists cases illustrating **"Jurisdiction determined after real party cure."**

Broadway's lack of fidelity to what its secondary authority says is hardly persuasive. MOORE'S is in accord with exceptionless primary authorities holding that Rule 17(a)(3) cannot create jurisdiction where none exists, adding the truism that if a Court with jurisdiction substitutes in a new party under Rule 17(a)(3), jurisdiction must be established anew.[7]

---

[7] Jurisdiction would not have existed in the Bankruptcy Court even if as Broadway incorrectly posits it is to be determined only after a Rule 17(a)(3) change in parties. There was no evidence supporting the Bankruptcy Court's ruling that an "understandable mistake" took place in naming Paccioretti as the plaintiff. "An understandable mistake is not present if the court can conclude that 'there was no difficulty and no mistake in determining who was the proper party to bring suit.'"

-8-     Appellant's Reply Brief

There is literally no legal authority casting doubt on the firmly-entrenched proposition that Rule 17(a)(3) does not operate where subject-matter jurisdiction is lacking. The "prudential standing" defect that exists when a real party in interest is absent is curable under the Rule, but lack of constitutional standing is not:

> "The importance of the distinction between standing and real party in interest is their respective remedies. If a party does not have standing it must be dismissed from the action. On the other hand, '[t]he Court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action' Fed. R. Civ. P. 17(a)(3).'" JSC Terminal, LLC v. Farris, 2010 U.S. Dist. LEXIS 52481 at *6 (W.D.Ky. May 27, 2010).

Apart from its inaccurate rendition of MOORE'S, nothing in the Answering Brief questions this critical limitation on Rule 17(a)(3).

**3. F.R.Civ.P. 15 Does Not Permit Amendment to Create Jurisdiction Where None Exists**

Answering Brief 14-15 dissects the amendment mechanics of Rule 15(a). However, it refers to none of the appellate decisions cited at Opening Brief 14-15 holding that Rule 15(a) is not activated to begin with if the Court does not possess jurisdiction.[8] As Courts state again and again, "Rule 15 is not to be viewed as enlarging or restricting federal jurisdiction," Lamb v. United States Postal Serv., 852 F.2d 845, 847 (5th Cir. 1988), quoting USM Corp. v. GKN Fasteners, Ltd., 578 F.2d 21, 22 (1st Cir. 1978) - - the key point Broadway stubbornly ignores.

Answering Brief 15-18's lengthy excursus on the relation back mechanics of Rule

---

Kreisel v. Kreisel, 399 B.R. 679, 689 (Bankr. C.D.Cal. 2008). The two sophisticated bankruptcy firms which selected the plaintiff, and Paccioretti himself, just had to read the Liquidating Trust Agreement to identify the proper claimant. There was not a scintilla of difficulty or ambiguity in identifying Broadway as the right plaintiff. Amendment under Rule 17(a)(3) should have been denied for this reason, leaving the fatal jurisdictional flaw in place.

[8] Answering Brief 9 n.1 cites the sole opinion to the contrary, United States ex rel. Precision Co. v. Koch Industries, Inc., 31 F.3d 1015 (10th Cir. 1994). It offers no explanation why this decision ought to be credited in lieu of the ignored decisions from other Circuits disavowing it. See Opening Brief 15 n.16.

-9-      Appellant's Reply Brief

15(c) are a mystery. Before relation back can be considered, amendment "must be appropriate under the criteria of Rule 15(a)." Ellzey v. United States, 324 F.3d 521, 527 (7th Cir. 2003). "Rule 15(c) may not be used to extend federal jurisdiction," Miguel v. Country Funding Corp., 309 F.3d 1161, 1165 (9th Cir. 2002), and is of no import in these appeals because the jurisdictional infirmity infecting Paccioretti's Complaint bars the very amendment under Rule 15(a) as to which relation back might be sought under Rule 15(c).

### 4. 11 U.S.C. §105(a) Does Not Permit Amendment to Create Jurisdiction Where None Exists

"[S]ection 105(a) is not a jurisdictional statute." Packers' Cold Storage, Inc. v. Bayview Trucking, Inc., 64 B.R. 265, 267 (Bankr. C.D.Cal. 1986). Thus "Section §105(a) does not . . . broaden the bankruptcy court's jurisdiction, which must be established separately." Read v. Duck, 105 B.R. 542, 544 (9th Cir. BAP 1989). There was no jurisdiction over Paccioretti's Complaint before §105(a) was invoked, and none after.

Answering Brief 19 candidly acknowledges that §105(a) "is not an independent source of jurisdiction." After this telling concession, however, it proceeds with a three-page section titled "The Court Could Have Allowed The Liquidating Trustee To Amend the Complaint Under Section 105." Nothing in that section addresses use of §105(a) to replace an incumbent plaintiff who lacks Article III standing.

Instead, Broadway drifts back into discussing Rule 17(a)(3), this time focusing on Liberty Mutual Ins. Co. v. Official Unsecured Creditors' Committee, 207 B.R. 899 (9th Cir. BAP 1997). That decision allowed an unsecured creditors committee to sue on behalf of a bankruptcy estate after the estate, the real party in interest under Rule 17(a)(3), ratified the committee's complaint. Broadway seizes on the statement that "It is well settled that in appropriate situations the bankruptcy court may allow a party other than the trustee or debtor-in-possession to pursue the estate's litigation," as if it trumps the manifold, uniform decisions holding that the Rule may not be used to create jurisdiction.

-10- Appellant's Reply Brief

As Rule 82 prescribes, neither Rule 17(a)(3) nor any other Rule may function as Broadway envisions. The statement Broadway excerpts from Liberty Mutual Ins. Co. is not *carte blanche* to substitute a plaintiff; it allows substitution only in "appropriate situations." When a Court is bereft of adjudicatory power it is tautologically not an "appropriate situation" to exercise judicial power under Rule 17(a)(3).

### 5. 28 U.S.C. §1653 Does Not Permit Amendment to Create Jurisdiction Where None Exists.

Broadway does not challenge Opening Brief 16-17's point that 28 U.S.C. §1653 "addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves," Newman-Green, Inc. v. Alfonso-Larrain, 490 U.S. 826, 831 (1989), nor does it even mention §1653.

## VII. CONCLUSION

The adversary proceeding against Starcrest should be ordered dismissed for lack of subject-matter jurisdiction.

Dated: September 3, 2010

D. GERBER LAW OFFICES
DAVID A. GERBER

ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP
YALE K. KIM

By: _____
David A. Gerber
Attorneys for Defendant/Appellant
Starcrest Products of California, Inc.

**Form 6.   Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   ☒ this brief contains ___3,771___ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   ☐ this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☒ this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)* __WordPerfect 12__ *(state font size and name of type style)* __14 pt. font and Times New Roman__, *or*

   ☐ this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)* _____ with *(state number of characters per inch and name of type style)* _____

Signature  /s/ David A. Gerber, Esq.

Attorney for  Appellant and Defendant

Date  September 3, 2010